**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

**No. 97-31302**
**Summary Calendar**


**ALAYNE R. WATSON,**

                                        **Plaintiff-Appellant,**


**VERSUS**


**SPECIAL AGENTS MUTUAL BENEFIT ASSOCIATION, INC.,**
**(SAMBA); AMEX LIFE ASSURANCE COMPANY,**

                                        **Defendants-Appellees.**


Appeal from the United States District Court
For the Middle District of Louisiana

(97-CV-101-B-M3)

June 4, 1998


Before DUHÉ, DeMOSS, and DENNIS, Circuit Judges.

PER CURIAM:[*]


## BACKGROUND

     From 1971 until October 1991, James M. (Mike) Watson was
employed by the Federal Bureau of Investigation, Department of

_____

     [*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this
opinion should not be published and is not precedent except under
the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Justice of the United States ("FBI"). As a result of this employment Mike Watson was enrolled in various group insurance plans provided by Special Agents Mutual Benefit Association, Inc. ("SAMBA"). One of these plans was a group life insurance coverage issued by AMEX Life Assurance Company ("AMEX"). All of the plans provided by SAMBA to its membership are part of one employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 (ERISA). These plans are administered and maintained by the SAMBA Board of Directors. In October 1991, Mike Watson was sent into mandatory retirement for health reasons by the FBI. On October 23, 1991, Mike Watson was divorced from his wife, Alayne R. Watson. In February 1992, SAMBA received a letter on stationery of James M. Watson. This letter, which was unsigned but had the name James M. Watson typed at the bottom, states in part:

> I RECENTLY DIVORCED AND I WISH TO CANCEL ALL INSURANCE ON MY SPOUSE AND CONTINUE INSURANCE ONLY ON MYSELF FOR $25,000 AND MY MINOR CHILD, MERI WATSON AT $2000. I ALSO WISH TO CHANGE MY BENEFICIARY TO GERALD C. WATSON, 1801 MIDPINES COURT, ARLINGTON, TX.
>
> PLEASE SEND ME ANY NECESSARY FORMS FOR THE ABOVE CHANGES.

In April 1992, SAMBA received another letter which was signed and states:

> I RECEIVED NO CHANGE OF BENEFICIARY FORM IN REF. LETTER AND WOULD LIKE TO CHANGE MY BENEFICIARY. PLEASE FORWARD.

After receipt of these two letters, SAMBA changed the beneficiary

2

on Mike Watson's group term life insurance policy No. E105-931 from Alayne Watson (his former wife) to Gerald C. Watson (his brother). Mike Watson died on February 8, 1993, as a result of liver failure. On March 3, 1993, Gerald Watson provided SAMBA with proof of loss in the form of a death certificate for Mike Watson and a written claim for benefits as the beneficiary of Mike Watson's life insurance coverage with the plan. AMEX paid the proceeds of Mike Watson's life insurance coverage to Gerald Watson on March 25, 1993. On November 22, 1993, Alayne Watson called AMEX and asserted her belief that Gerald Watson "may have forged her name" in order to obtain the proceeds of Mike Watson's life insurance. Alayne Watson did not, however, tender any evidence to AMEX or SAMBA in support of this assertion. In February 1995, more than two years after Mike Watson's death, Alayne Watson filed a written claim that she was entitled to life insurance benefits as the original beneficiary under her ex-husband's policy.

In February 1996, Alayne Watson sued AMEX and SAMBA in Louisiana state court, but neither defendant was notified of this action until January 1997. In her complaint, Alayne Watson seeks "civil enforcement of the benefits due her under the provisions of ERISA and the terms of the group life insurance policy on her ex-husband Mike Watson." Alayne Watson specifically alleges that SAMBA and AMEX wrongfully denied her benefits under her ex-husband's coverage by removing her as the beneficiary of her ex-husband's coverage in response to the two letters which the plan

3

received from Mr. Watson prior to his death in February 1993.  In February 1997, AMEX and SAMBA removed this action to the federal District Court for the Middle District of Louisiana and after discovery, moved for summary judgment.  On November 3, 1997, the United States District Court granted the motion for summary judgment and dismissed plaintiff's complaint with prejudice.

We have carefully reviewed the briefs, the record excerpts and relevant portions of the summary judgment record.  For the reasons stated by the District Court in its Ruling on Defendant's Motion for Summary Judgment filed under date of November 3, 1997, we believe the Final Judgment entered on the same date should be, and is hereby, AFFIRMED.